USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
201-342-7100
**Attorneys for Plaintiff**
**Edward A. Friedman**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| EDWARD A. FRIEDMAN, | Civil Action No. 07cv9620-SHS-AJP |
| Plaintiff, | |
| | ECF CASE |
| vs. | |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, | AFFIDAVIT OF MICHAEL E. QUIAT |
| Defendant. | |

---

Michael E. Quiat duly sworn deposes and says:

1.  I am counsel to the Plaintiff Edward A. Friedman in connection with the above referenced matter.  I also handled Mr. Friedman's administrative appeal prior to the commencement of litigation in this matter.

2.  I write this Affidavit in order to clarify a matter in the record which has been grossly mischaracterized by Prudential.

3.  Mr. Friedman filed an extensive administrative appeal of the initial denial of his long term disability claim on May 31, 2007 (AR P00674 – P00734).

4.  On June 5, 2007, Tim Routh, the Appeals Specialist for Prudential, wrote to my office:

> "In your May 31, 2007 letter, you reported that Mr. Friedman suffers from medication side effects, including "mental confusion" and "short term memory loss." As such, we are currently attempting to schedule an Independent Neuropsychological Evaluation.  We will notify you shortly of the details regarding this, including the neuropsychologist's name and address and the date of the evaluation."

(See June 5, 2007 correspondence from Tim Routh to Michael Quiat at AR P01035 attached hereto as **Exhibit A**).

5.  On June 12, 2007, despite the fact that Mr. Friedman was clearly represented by counsel, Prudential caused its agent Psybar to contact Mr. Friedman *directly* to attempt to schedule a neuropsych examination, purportedly based on the reasons set forth in Mr. Routh's June 5, 2007 correspondence.  (See June 12, 2007 correspondence from Psybar to Mr. Friedman attached hereto as **Exhibit B**).

6.  On June 19, 2007, this firm corresponded with Mr. Routh on behalf of Mr. Friedman indicating his willingness, *inter alia*, to proceed with a neuropsych examination limited to the two areas identified by Prudential: "mental confusion" and "short term memory loss."  (See June 19, 2007 correspondence at AR P00462 attached hereto as **Exhibit C**).

7.  In this June 19, 2007 correspondence, Mr. Friedman also asked that benefits be provided, under a reservation of rights, to illustrate Prudential's good faith, in order to alleviate the severe financial hardship facing Mr. Friedman as a result of being unemployed for the past year, without disability income benefits.

8.  On June 20, 2007, Prudential responded by rejecting Mr. Friedman's positions and insisting that the scope of examination be unlimited.  (See June 20, 2007 correspondence from Routh to Quiat at AR P00291 attached hereto as **Exhibit D**).

9.  On June 22, 2007, I telephoned Mr. Routh at Prudential to discuss the matter. Mr. Routh explained that he was concerned about the "mental confusion" and "short term memory loss" components of Mr. Friedman's appeal as these were issues that had not previously been raised.  In response, I informed Mr. Routh that Mr. Friedman was not contending that "mental confusion" and "short term memory loss" were significant components of his long term disability claim.  In response he indicated that Prudential would waive its request for a neuropsych IME.

10. That same day, I corresponded with Mr. Routh confirming those facts.  (See June 22, 2007 correspondence from Quiat to Routh at AR at P00460 attached hereto as **Exhibit E**).

11. Notwithstanding, without informing me or Mr. Friedman, Mr. Routh then proceeded to record in the internally maintained records of Prudential at AR P01012 the following:

> "Reached Mike.  He suggested that if he stipulates that memory deficits, **medication side effects**, cognitive deficits are not a major component of the claimant's claim of disability, would we not require the neuropsychological IME.  I advised that if the claimant is not claiming these things to be disabling, then there would be no need for a NP IME.  (Emphasis added).

(AR P01012 attached hereto as **Exhibit E**).

12. The note recorded by Mr. Routh, and attributed to me, that **medication side effects** were not a major component of Mr. Friedman's disability claim is **false**.  At no time did I ever say, or did Mr. Friedman ever agree, that he was not disabled by virtue of medication side effects.  Indeed, a review of the medicals and the appeal materials reflect consistently that Mr. Friedman has repeatedly alleged that he is disabled by the ingestion

of huge doses of Toprol-XL, which he must take in order to control his dangerously erratic heart rhythm. Mr. Routh's attempt to create the impression that Mr. Friedman had waived any claim to disability as a result of **medication side effects** has no basis in fact, and is rather a transparent attempt to distort the record of what transpired, as the correspondence between the parties clearly reflects.

13. In retrospect, as a review of the Administrative Record will reflect, the attempt to secure a neuropysch IME from Mr. Friedman was apparently nothing but a ruse in order to set up Mr. Friedman for surveillance. (AR P01003)

14. The gamesmanship reflected by this history speaks volumes about Prudential's lack of good faith, and its intent to deny this claim regardless of the evidence.

15. Since Prudential is a fiduciary under ERISA, this conduct is particularly deplorable and should be rejected by this Court.

_____
MICHAEL E. QUIAT (MEQ-8238)

Sworn and Subscribed to before me

This _15_ day of _April_____, 2008

_____Elizabeth C Nixon_____

**ELIZABETH C. NIXON**
**NOTARY PUBLIC OF NEW JERSEY**
**COMMISSION EXPIRES 3 / 8 / 2011**

G:\Disability\Friedman\Summary Judgment\Affidavit MQ.doc

# EXHIBIT A

 **Prudential Financial**

Tim Routh
Appeals Specialist

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84424
Fax: (877) 889-4885
Website: www.prudential.com/inst/gldi

June 5, 2007

Mr. Michael Quiat, Esq.                        Claimant: Edward A Friedman
Continental Plaza                               Claim No.: 10892708
433 Hackensack Avenue, 2d Floor                 Date of Birth: 10/05/1959
Hackensack, NJ 07601                            Control No./Br.: 90754 / 00001

IIIıılıılıllıllımlllllıl

Dear Mr. Quiat, Esq.:

We are writing regarding Edward A. Friedman's claim for Long Term Disability (LTD) benefits under Group Policy No. 90754 issued to Newmark & Company Real Estate, Inc.

On June 1, 2007, we received your request for reconsideration of his claim. We are performing a thorough evaluation based on the information currently in Mr. Friedman's file.

In an undated letter from Dr. Gerald S. Bahr, which we received on November 8, 2006, he reported that Mr. Friedman had consulted with Dr. Andrew Szabo secondary to a thyroid mass, and with Dr. Laura Cozzarelli for treatment of glaucoma. As such, we requested medical records from these providers on June 5, 2007.

In your May 31, 2007 letter, you reported that Mr. Friedman is a patient of Dr. Alcibiades Rodriguez for treatment of Obstructive Sleep Apnea, and Dr. Mark Gardenswartz, who diagnosed Mr. Friedman with Dysautonomia. Therefore, we requested medical records from these two physicians on June 5, 2007.

We also requested updated medical records on June 5, 2007, from Dr. Bahr and Dr. Steven Zweibel.

In your May 31, 2007 letter, you reported that Mr. Friedman suffers from medication side effects, including "mental confusion" and "short term memory loss." As such, we are currently attempting to schedule an independent neuropsychological evaluation. We will notify you shortly of the details regarding this, including the neuropsyhcologist's name and address and the date of the evaluation.

Please ensure our receipt of the medical records from Drs. Bahr, Zweibel, Rodriguez, Gardenswartz, and Cozzarelli no later than July 15, 2007.

If you have any questions, please contact me at (800) 842-1718, extension 84424.

Sincerely,

**Tim Routh**
Tim Routh

Appeals Specialist

# EXHIBIT B

*Attention: Michael Quiat*

# PSYBAR

Objective Opinions/Confident Decisions

**PsyBar LLC**
5151 Edina Industrial Blvd. – Suite 675
Minneapolis, MN 55439
T – (952) 285-9000
F – (952) 848-1798
E – info@psybar.com

WWW.PSYBAR.COM

June 12, 2007

Edward Friedman
4 East 89th Street, Apt 4G
New York, NY 10128

Dear Mr. Edward Friedman:

This letter is to confirm your Independent Neuropsychological evaluation. PsyBar has arranged the appointment for you at the request of Prudential Disability Management. No cancellation or change in the appointment will be made without the approval of Prudential Disability Management. The information you will need for your appointment is as follows:

**Testing Date:** (This is an all-day appointment, please plan to arrive 15 minutes before the start time)
**Evaluation date: Wednesday, July 11th from 10:30am – 4:30pm**
**Doctor: William Barr, Ph.D.**

**Location: New York Sleep Institute**
**724 2nd Avenue**
**Sonoma Building**
**New York, NY 10016**
(212) 263-8347 **Please call this number (during regular office hours) to confirm directions.

You will not be charged for this examination. When you arrive for your appointment, do not provide any of your personal insurance information. Billing arrangements have already been made with the doctor's office. If there is a question, the doctor's office should call PsyBar at 952 285 9000. If you wear eyeglasses or a hearing aid, be sure to bring them to your appointment. Also, please try to bring a list of all of your current medications and dosages. The results of this assessment could have an impact on your insurance benefits. At this appointment you will be asked to sign consent and release forms. These forms indicate an awareness of confidentiality issues. If you have questions regarding these forms, contact PsyBar well in advance of your appointment. Please note, the expert cannot accept forms that have been altered.

PsyBar's highest priority is arranging high quality evaluations. We take a number of steps to achieve this goal. First, we will encourage the doctor who will see you to get information about you using a variety of sources, including your medical records, test results, a discussion with you and, with your permission, sometimes with others. To encourage objectivity, PsyBar asks most doctors to give standardized psychological tests. We will also ask our doctor to evaluate you following a scientifically based plan. We will likely pay an independent doctor (one who is not a PsyBar employee) to read and offer comments of your report to promote objectivity and clarity. PsyBar may also suggest ways that the doctor can improve the report's clarity and objectivity. The doctor you see may accept or reject any of these comments. PsyBar will pay the doctor you see directly, and your insurer will pay PsyBar.

We require at least a five business-day cancellation notice. If you have a conflict with this appointment, **immediately contact Prudential Disability Management.**

Respectfully,

Karrie Puncochar
PsyBar Referral Coordinator

cc:    Prudential Disability Management

# EXHIBIT C

LAW OFFICES

# USCHER
# QUIAT
# USCHER &
# RUSSO

A PROFESSIONAL CORPORATION

CONTINENTAL PLAZA
433 HACKENSACK AVENUE
HACKENSACK, NJ 07601
(201) 342-7100
FAX (201) 342-1810
uqur@uqur.com

ARTHUR USCHER
MICHAEL E. QUIAT*
JOSEPH A. RUSSO*

Of Counsel
ETHAN V. FINNERAN*

NEW YORK OFFICE

355 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
(212) 856-1214
FAX: (212) 983-0772

*ADMITTED TO NY & NJ BARS

WILLIAM USCHER
(1959-2003)

June 19, 2007

*Via Regular Mail & Fax 877-889-4885*

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19176

Attn:   Mr. Tim Routh

Re:     *Edward A. Friedman*
        *Claim No. 10892708*
        *Date of Birth 10/5/59*
        *Control No./Br. 90754/00001*

Dear Mr. Routh:

As you know, this firm is counsel to Edward A. Friedman in connection with his pending appeal of Prudential's denial of his claim for long term disability benefits under group Policy No. 90754 issued to Newmark & Company Real Estate, Inc.

Receipt is acknowledged of your June 5, 2007 correspondence setting forth your proposed plan of action with respect to Mr. Friedman's appeal.

I am also in receipt of correspondence dated June 15, 2007 from Psybar tentatively establishing a July 11, 2007 date for neuropsych testing at the hands of William Barr, PhD. Our response to that proposal is set forth below.

There is no provision in ERISA or in the Department of Labor regulations promulgated under ERISA for the conduct of an Independent Medical Exam *after* the claim for long term disability has been denied and appealed. In *Cherry v. Digital Equipment Corp. and Prudential Insurance Company of America*, 2006 WL 2594465 the Court was faced with a similar request by Prudential to conduct an IME after the claim had been denied and appealed. In refusing to permit the IME to proceed, the Court explained:

> "Defendants' request for an IME was not reasonable at the time it
> was made.    First, Defendants had already denied Plaintiff's

Mr. Tim Routh
June 19, 2007
Page 2

> benefits before deciding there was a need for an IME. Thus, if an
> IME was genuinely necessary, this calls into question whether
> there was sufficient support for Prudential's initial decision to deny
> benefits."

As a result of the above analysis, the District Court in *Cherry* upheld claimant's refusal to submit to an IME and reversed the denial of benefits.

Clearly, the analysis applied by the Court in *Cherry* is fully applicable to this case. Mr. Friedman underwent a significant claim investigation process which ultimately resulted in Prudential's decision to deny his claim. During that period of time, Prudential was free to conduct whatever reasonable examinations it deemed appropriate, including neuropsychological evaluations, and other such IMEs.

Apparently, Prudential felt it had sufficient information upon which to deny Mr. Friedman's claim, without conducting an IME. To suggest on appeal that it now wishes to take a closer look at Mr. Friedman's impairment does raise a serious question about the propriety of Prudential's original claim handling process in this matter.

Moreover, we question the need for the neuropsychological exam which you propose in Psybar's June 15, 2007 correspondence. This request is predicated upon the paragraph in your June 5, 2007 correspondence relating to Mr. Friedman's claim of "mental confusion" and "short term memory loss." In this regard, as a review of Mr. Friedman's entire May 31, 2007 appeal reflects, Mr. Friedman's "mental confusion" and "short term memory loss" are sporadic symptoms which are not always present and do not always impair Mr. Friedman. The medication side effects of the massive doses of Toprol which Mr. Friedman takes daily are well documented. Mental confusion and short term memory loss are but a relatively minor part of the side effects which disable Mr. Friedman. That said, it appears that an overemphasis on this symptomology alone will not be highly probative to the central issues presented in Mr. Friedman's appeal.

Notwithstanding the fact that Prudential is not entitled under the law to conduct an IME at this stage, and without conceding the efficacy of such an IME in this case, Mr. Friedman has indicated a willingness to submit to such an IME, under certain reasonable specifications and restrictions:

1. Mr. Friedman will expect to have his benefits paid, albeit under a reservation of rights, up to the current time and pending the outcome of this appeal, as a sign of good faith on the part of Prudential, and in light of the fact that this process has now been pending for almost a year during which time Mr. Friedman has not been working, nor has he received any of the benefits to which he is legally entitled. This extended period without income has created a real hardship for Mr. Friedman, which itself has tended to exacerbate his already significantly impaired status.

Mr. Tim Routh
June 19, 2007
Page 3

    2.  Mr. Friedman is willing to submit to neuropsychological testing, but only to the extent same are focused on the issues raised in your June 5, 2007 correspondence, namely the incidence of "mental confusion" and "short term memory loss." Mr. Friedman will *not* submit to any testing for issues beyond these two clearly defined areas of inquiry. Nor will Mr. Friedman permit Psybar to offer "opinions" to Prudential on anything other than these two limited areas.

        In order to assure these limitations are respected, Mr. Friedman will expect to be informed (so that he may approve) in advance precisely which tests Dr. Barr intends to perform, and will insist upon access to the all data generated in connection with such examination, as well as copies of any reports generated there from.

    3.  It is the practice of this firm to accompany clients to IMEs. In this instance, Mr. Friedman will be accompanied by Kathleen Meneses, a paralegal in our firm. She reserves the right to record the process either by video or audiotape.

    4.  Finally, Mr. Friedman is currently scheduled for further medical testing on July 11, 2007. Therefore, assuming the above stipulations are acceptable, it will be necessary for the date with Dr. Barr to be rescheduled.

        I trust that Mr. Friedman's position with respect to these issues is clear from the content of this correspondence. If not, I would invite you to contact my office at your very earliest convenience to clarify any questions or issues you may have.

        In addition, to the extent that there is a question as to whether Prudential or Psybar intends to comply with these reasonable requests, please advise immediately so that we may take appropriate action.

                        Very truly yours,

                        USCHER, QUIAT, USCHER & RUSSO
                        A Professional Corporation

                        MICHAEL E. QUIAT

MEQ:ln
cc:   Mr. Edward Friedman
G:\Disability\Friedman\Routh 6-19-07.doc

**EXHIBIT D**

RECEIVED JUN 2 5 2007

 **Prudential Financial**

**Tim Routh**
Appeals Specialist

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84424
Fax: (877) 889-4885
**Website:  www.prudential.com/inst/gldi**

June 20, 2007

Mr. Michael Quiat, Esq.
Continental Plaza
433 Hackensack Avenue, 2d Floor
Hackensack, NJ  07601

Claimant: Edward A Friedman
Claim No.: 10892708
Date of Birth: 10/05/1959
Control No./Br.: 90754 / 00001

IIIнιɪ.ιιɪ.ɪɪΙ.ɪɪΙιιιιιɪΙιΙΙιɪɪ

Dear Mr. Quiat, Esq.:

Thank you for your June 19, 2007 letter with respect to the conditions upon which Edward A. Friedman will sit for the Independent Neuropsychological Examination we have scheduled; however, the conditions and your position on this matter are not deemed reasonable or acceptable to Prudential.

In your letter, you wrote, "Apparently, Prudential felt it had sufficient information upon which to deny Mr. Friedman's claim, without conducting an IME.  To suggest on appeal that it now wishes to take a closer look at Mr. Friedman's impairment does raise a serious question about the propriety of Prudential's original claim handling process in the matter."

Please note that in completing the initial Claimant's Statement for Long Term Disability (LTD) benefits, dated September 14, 2006, Mr. Friedman advised Prudential that he cannot work because of "fatigue, limited resistance, heart problems, worsening episodes of syncope, stomach problems, etc."  He made no mention of a medical condition for which neuropsychological testing would have been requested during the original claim handling process.

In completing an Attending Physician Statement (APS) dated September 7, 2006, Dr. Gerald S. Bahr wrote that the nature of Mr. Friedman's medical impairment was related to "tachycardia, syncope, (and) diarrhea."  No mention was made of a neuropsychological impairment.

In completing an APS dated September 12, 2006, Dr. Steven Zweibel listed Mr. Friedman's medical obstacles to returning to work as, "recurrent syncope, dizziness, lightheadedness."  Once again, no mention was made of a neuropsychological condition or symptoms for which neuropsychological testing would have been reasonably requested.

Please also note that in telephone conversations with Mr. Friedman on October 18, 2006 and October 26, 2006, he did not report to us that he was suffering from conditions or symptoms that are neuropsychological in nature.

The first claim of Mr. Friedman's impairment secondary to conditions or symptoms neuropsychological in nature was made by you in your letter of appeal dated May 31, 2007.  Our request that Mr. Friedman attend an independent neuropsychological examination is in response to your raising a new basis for his impairment in your letter of appeal.  In fact, you acknowledge in your letter of appeal that Mr. Friedman's condition has changed since the time his claim was

originally disallowed, as you wrote, "Since the time of his denial however, Mr. Friedman has undergone significant additional medical treatment and consultation to better understand the reasons for his seriously declining health."

It is also notable that in your letter of appeal, you criticized Prudential for not requesting that Mr. Friedman attend an Independent Medical Examination (IME); yet you now criticize Prudential for requesting an IME.   Post-disallowal, Mr. Friedman has sought medical treatment to "better understand" his medical status; is Prudential not permitted to also "better understand" his condition and its effect on his functionality?

***We require your written notice as to whether or not Mr. Friedman will attend the scheduled independent neuropsychological examination no later than the close of business (5 p.m., EST) on Friday, June 22, 2007.***

As above, the conditions you set forth for his attendance of the neuropsychological examination are not reasonable or acceptable to Prudential: benefits will not be extended to Mr. Friedman under Reservation of Rights pending the completion of the examination; the "areas of inquiry" will not necessarily be limited to Mr. Friedman's "mental confusion" and "short term memory loss;" and a member of your firm may not attend the examination with Mr. Friedman and/or video- or audiotape the examination due to test security.

We understand from your June 19, 2007 letter that Mr. Friedman is unavailable to attend the examination on July 11, 2007, due to another medical appointment.   If necessary, we will reschedule for another date; however, please advise us by June 22, 2007, of any dates after July 11, 2007, that Mr. Friedman is unavailable.

If you have any questions, please contact me at (800) 842-1718, extension 84424.

Sincerely,

*Tim Routh*

Tim Routh
Appeals Specialist

# EXHIBIT E

LAW OFFICES

# USCHER
# QUIAT
# USCHER &
# RUSSO

A PROFESSIONAL CORPORATION

CONTINENTAL PLAZA
433 HACKENSACK AVENUE
HACKENSACK, NJ 07601
(201) 342-7100
FAX (201) 342-1810
uqur@uqur.com

ARTHUR USCHER
MICHAEL E. QUIAT*
JOSEPH A. RUSSO*

Of Counsel
ETHAN V. FINNERAN*

NEW YORK OFFICE

355 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
(212) 856-1214
FAX: (212) 983-0772

*ADMITTED TO NY & NJ BARS

WILLIAM USCHER
(1959-2003)

June 22, 2007

*Via Regular Mail & Fax 877-889-4885*

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19176

Attn:    Mr. Tim Routh

Re:     *Edward A. Friedman*
         *Claim No. 10892708*
         *Date of Birth 10/5/59*
         *Control No./Br. 90754/00001*

Dear Mr. Routh:

   This letter follows up on our telephone conversation today with respect to the pending appeal of Edward Friedman for long term disability benefits under the above referenced claim number.

   As discussed, "mental confusion" and "loss of short term memory" are minor components of this claim. Mr. Friedman is not alleging that these two symptoms, alone, are currently disabling.

   In view of the above, you indicated that Prudential would waive its current request for a neuropsychological IME.

   I believe the above accurately sets forth our communication today. If not, please contact my office immediately.

                                     Very truly yours,

                                     USCHER, QUIAT, USCHER & RUSSO
                                     A Professional Corporation

                                     MICHAEL E. QUIAT

MEQ:ln
cc:    Mr. Edward Friedman
G:\Disability\Friedman\Routh 6-22-07.doc

**EXHIBIT F**

09/10/2007

**Claim Number :**  **10892708**
**Claimant SSN:**  **###-###-0213**
**Claimant Name : FRIEDMAN**

Mike,

This evaluation is scheduled for Wednesday, July 11th with Dr. William Barr.

Karrie Puncochar
PsyBar Referral Coordinator

Appointment Information: Date of Evaluation:  Wednesday, July 11th from 10:30am - 4:00pm
        Doctor:  William Barr, Ph.D.
                        Location:  New York Sleep Institute
                                        724 2nd Avenue

Sonoma Building

                        New York, NY  10016
                        (212) 263-8317

Estimated total costs for all services in this matter, without cancellations, r
escheduling, or additional appointments:  $3500

| | | | |
|---|---|---|---|
| **Reason:** | E-Return Call to Claims Manager | **Direction:** | Incoming |
| **Call Date/Time:** | 06/22/2007 | **Contact Name:** | Attorney |

**Made/Rec'd by:**  Craig, John

Subject: Claim: 10892708

ee atty michael quiat called to speak to dcm returning phone call .

Epiphany Call Doc ID: 1664155  Request Type: Claim Information
Caller Type: Attorney
Caller Phone:    Ext.    Type:
Caller Address:

        Type:
Escalated: NO
Complaint: NO

| | | | |
|---|---|---|---|
| **Reason:** | RTC | **Direction:** | Outgoing |
| **Call Date/Time:** | 06/22/2007 | **Contact Name:** | Mike Quiat, Esq. |

**Made/Rec'd by:**  Routh, Timothy

Reached Mike. He suggested that if he stipulates that memory deficits, medication side effects, cognitive deficits are not a major component of the clmt's claim of disability, would we not require the neuropsychological IME. I advised that if the clmt i
s not claiming these things to be disabling, then there would be no need for a NP IME.  Mike advised that he does not have faith in the validity of NP testing, as he feels it is open to interpretation.  I advised that I was in no way attempting to back th
e clmt into having to decline attending the IME, I simply did not want to be faced with an issue in which we find no support for cognitive deficits or medication side effects, and are then criticized for not addressing these complaints through NP testing.

*Page 6*
Telephone Call Log
ClaimId = 10892708

