**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDWARD A. FRIEDMAN,

       Plaintiff,

       vs.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

       Defendant.

Civil Action No.:07-CIV-9620(SHS)


**DEFENDANT PRUDENTIAL INSURANCE COMPANY OF AMERICA'S BRIEF**
**IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**


MORGAN, LEWIS & BOCKIUS LLP
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
(215) 963-5001 (fax)

Attorneys for Defendant

1-PH/2886447.2

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 2

I.    MATERIAL FACTS BASED ON THE ADMINISTRATIVE RECORD ........... 2

    A.    Plaintiff's Medical History ........................................................................ 2

    B.    Plaintiff's Claim for LTD Benefits and Procedural History ..................... 6

        1.    The Initial Claim ........................................................................... 6

        2.    Plaintiff's Appeal ....................................................................... 11

LEGAL ARGUMENT .............................................................................................. 13

II.   POINT I - SUMMARY JUDGMENT IS APPROPRIATE WITH
      REFERENCE TO PLAINTIFF'S ERISA CLAIM UNDER THE ABUSE
      OF DISCRETION STANDARD OF REVIEW .................................................. 13

    A.    Standard of Review .................................................................................. 13

        1.    Summary Judgment Standard ..................................................... 13

        2.    Under the Arbitrary and Capricious Standard of Review,
            Plaintiff's Claim Must Fail. ....................................................... 14

CONCLUSION .......................................................................................................... 21

## TABLE OF AUTHORITIES

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys. Inc.*,
419 U.S. 281 (1974)..................................................................................................16

*Eubanks v. Prudential Ins. Co. of Am.*,
2004 U.S. Dist. LEXIS 19001 (M.D.N.C. September 2, 2004)....................................16

*Firestone Rubber & Tire Co. v. Bruch*,
489 U.S. 101 (1989)..................................................................................................14

*Lyles v. Prudential Ins. Co. of Am.*,
2004 U.S. Dist. LEXIS 11003 (E.D. Mo. June 14, 2004)............................................16

*McCoy v. Prudential Ins. Co. of Am.*,
No. 05-cv-11283 (D. Mass. July 31, 2006) ..............................................................15

*McLaughlin v. Prudential Ins. Co. of Am.*,
319 F. Supp. 2d 115 (D. Mass. 2004) ......................................................................16

*Miller v. United Welfare Fund*,
72 F.3d 1066 (2d Cir. 1995)......................................................................................20

*Mitchell v. Prudential Health Care Plan*,
2002 U.S. Dist. LEXIS 10567 (D. Del. June 10, 2002)...............................................16

*Mood v. Prudential Ins. Co. of Am. &*
*Yasuda Fire & Marine Ins. Co. of Am.*,
379 F. Supp. 2d 267 (E.D.N.Y. 2005) ......................................................................15

*New England Health Care Employees Union v. NLRB*,
448 F.3d 189 (2d Cir. 2006).....................................................................................17

*Pagan v. NYNEX Pension Plan*,
52 F.3d 438 (2d Cir. 1995)...................................................................................16, 18

*Perlman v. Swiss Bank Corp.*,
195 F.3d 975 (7th Cir. 1999) ......................................................................................2

*Pulvers v. First UNUM Life Ins. Co.*,
210 F.3d 89 (2d Cir. 2000)........................................................................................17

*Roach v. Prudential Ins. Brokerage, Inc.*,
2003 U.S. App. LEXIS 7232 (10th Cir. April 16, 2003).............................................15

*Shapiro v. Prudential Ins. Co. of Am.*,
2003 U.S. App. LEXIS 22053 (3d Cir. October 28, 2003)..............................................15

*Simone v. Prudential Ins. Co. of Am. & Benj. Jacobson & Sons*,
No. 04-Civ.2076 (DLC), 2005 WL 475406 (S.D.N.Y. Feb. 28, 2005) ........................15

*Sullivan v. LTV Aerospace and Def. Co.*,
82 F.3d 1251 (2d Cir. 1996)..............................................................................................17

*Whitney v. Blue Cross & Blue Shield*,
106 F.3d 475 (2d Cir. 1997)..............................................................................................17

## STATUTES

29 U.S.C. §1132.............................................................................................................1, 14

## PRELIMINARY STATEMENT

This Brief is submitted on behalf of Defendant, Prudential Insurance Company of America (hereinafter "Prudential"), in support of its Motion for Summary Judgment on all of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Edward A. Friedman's (hereinafter referred to as "Plaintiff") Complaint should be dismissed with prejudice in its entirety because Plaintiff's claim under 29 U.S.C. §1132 (Employee Retirement Income Security Act of 1974 ("ERISA")) that he was wrongfully denied Long Term Disability Benefits ("LTD Benefits") under a Group Long Term Disability Policy ("LTD Policy") through his employer is legally and factually unsupported. It is respectfully submitted that Prudential correctly determined that based upon all of the documentation provided by Plaintiff, his legal counsel and his healthcare providers that Plaintiff failed to demonstrate that his present medical conditions rendered him as disabled that term is defined in the LTD Policy at issue in this case.

Furthermore, as the LTD Policy governing Plaintiff's claim contains language that grants Prudential discretion to make factual and plan determinations, absent a showing by Plaintiff that Prudential acted arbitrarily and capriciously, Prudential's decision to deny Plaintiff's claim for LTD Benefits is entitled to deference. Based upon the record evidence before Prudential during its review of Plaintiff's claim, Prudential properly denied his claim that he was disabled by the same medical conditions that he had lived with, and-by his own admission and by the statements of his supervisors and co-workers, was able to work successfully with despite working long hours in an apparently highly stressful job for over three years prior to leaving his employment.

Prudential gave Plaintiff every opportunity to demonstrate that he was disabled and on its

own initiative reopened its initial review of Plaintiff's claim after his cardiologist

contacted Prudential questioning its decision to deny his claim for LTD Benefits.

Plaintiff failed to meet his burden. Thus Prudential's decision to deny Plaintiff's claim for

LTD Benefits must be upheld.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

### I.     MATERIAL FACTS BASED ON THE ADMINISTRATIVE RECORD[2]

#### A.     Plaintiff's Medical History

In or about 2000, Plaintiff, who was born on October 5, 1959, came under the

care of Dr. Gerald S. Bahr, an internist, at or about that time, Dr. Bahr commenced

treating Plaintiff with Asacol for ulcerative colitis. (P01275-P01278).

In 2001, Plaintiff informed Dr. Bahr that he was suffering from an irregular heart

---

[1]    Plaintiff's counsel has provided the Court with a complete set of the Administrative
Record considered by Prudential in its review of Plaintiff's claim for LTD Benefits.
It is our understanding that documents Bates Stamp Numbered P0001-P0328
constitute the Administrative Record as it existed on September 26, 2006 and as
provided by Prudential to Plaintiff's counsel. Documents Bates Stamp Numbered
P0329 through P1061 constitute the Administrative Record as it existed on
September 13, 2007 and as provided by Prudential to Plaintiff's counsel. Documents
Bates Stamp Numbered P1062-P1999 constitute Prudential's Initial Disclosures as
provided to Plaintiff's counsel in this litigation on February 27, 2008 and include the
entire Administrative Record as well as the Group Contract, Certificate of Coverage
and Summary Plan Description  For ease of reference and to minimize duplication,
Prudential will refer to pages of the Administrative Record in its Initial Disclosures
(P01062-P01999) throughout this Brief.

[2]    It is well established that a  Court's decision as to whether an ERISA fiduciary
abused its discretion in denying a claim for LTD Benefits must be based on the facts
known to the fiduciary at the time a benefits claim decision was made. The Court is
limited in its review of a fiduciary's decision to deny a benefits claim to the
Administrative Record that was before the fiduciary. *Perlman v. Swiss Bank Corp.*,
195 F.3d 975 (7th Cir. 1999).

rate. Dr. Bahr ordered a stress test which indicated that Plaintiff's heart rate reached 134 beats per minute within the first minute of exercise and remained in the range of 120 beats per minute for more than 20 minutes. (*Id.*).

Dr. Bahr referred Plaintiff to Dr. Steven Zweibel, a cardiologist and electrophysiologist, for further treatment and a determination as to the cause of this condition. *(Id.).*

In or about October 2001, Plaintiff commenced treatment with Dr. Zweibel. On or about November 5, 2001, Dr. Zweibel, proscribed 25 mg per day of Toprol-XL, a beta blocker to address Plaintiff's heart rate. Four weeks later he increased the dosage to 50 mg per day. (P01286-P01288).

In July 2002, Dr. Zweibel conducted an electrophysiology ("EP") study of Plaintiff. While most of the findings were normal, it was noted that there was "inducible atrial fibrillation with atrial pacing at 160 ppm but no other inducible SVT." Dr. Zweibel also performed a Tilt-Table Test that reproduced near-syncope associated with brachycardia and hypotension. Overall, however, the EP study was determined to be normal. At that time, Plaintiff's existing prescription of 50 mg/day of Toprol was continued. (P01214-P01216). Plaintiff bought a Mio watch to monitor his heart rate. No other treatment was indicated. (*Id*).

In August 2003, Plaintiff began working for Newmark Real Estate ("Newmark") a commercial real estate company in New York City. Shortly after he commenced his employment, Plaintiff was named Executive Vice President, Brokerage & Advisory Services. He subsequently became a partner with the firm. The firm thereafter merged

with another real estate company, Knight Frank, and is now known as Newmark Knight Frank. (P01261-P01262).

In March 2005 Plaintiff underwent a colonoscopy performed by Dr. Myron Goldberg, a gastroenterologist. The test was normal. There was no evidence of abnormalities, active irritable bowel syndrome or dysplasia. No further treatment or follow-up was recommended. (P01867-P01869, P01878).

In May 2005, Plaintiff was riding a JetSki when he had an accident and was stung by a jellyfish. (P01492). He went to Lenox Hill Hospital in New York City for trauma evaluation. As part of the evaluation, CT Scans of the head, chest, abdomen and pelvis were performed. All of his vital organs were found to be normal except for a three-millimeter nodule discovered in his right lung. No treatment was recommended at that time although it was suggested that a six month follow up occur. (P01527-P01528).

Thereafter, Plaintiff had an echocardiogram ("echo") on January 12, 2006 which appeared to indicate that there was "thickened MV with mild myxomatous change and mild mitral regurgitation," but was otherwise normal. (P01446). In February 2006, Plaintiff also underwent a chest X-ray and CT-scan of his vital organs. Those examinations revealed a thyroid nodule, but otherwise, his vital organs, including his heart, lungs and bowel, were normal. (P01524-P01526, P01901). The CT scan found no evidence of the lung mass found in the CT Scan conducted at Lenox Hill Hospital in May 2005. (*Id.*).

Most of Plaintiff's medical records for the period of the Spring and Summer of 2006 relate to the discovery of the thyroid nodule and the diagnosis and possible

treatment of same. The mass was tested. It was ultimately determined to be benign, but its rapid growth and Plaintiff's family history of thyroid disease led to the decision to remove the thyroid. This surgery was successfully performed on April 9, 2007. Plaintiff was placed on thyroid replacement therapy. No other treatment has been sought for the thyroid. (P01232-P01257, P01487-P01489, P01495, P01523, P01535).

Beginning in late 2006, Plaintiff's medical records focused on his cardiac complaints. In August, his primary care physician, Dr. Bahr, diagnosed Plaintiff with arrhythmia, ulcerative colitis and a thyroid mass. His office notes indicate that there was an abnormal EP study and an abnormal colonoscopy. (P01823-P01829). However, the only EP study or colonoscopy are those described above all of which were normal. In September 2006, after Plaintiff had ceased working, Dr. Zweibel diagnosed Plaintiff with likely autonomic dysfunction, ulcerative colitis and sinus tachycardia. No objective bases for these diagnoses were provided. (P01338).

Plaintiff's dosage of Toprol had been incrementally increased to 300 mg/day by 2005. There are no real-time records documenting the need for the increased Toprol dosage, or the symptoms that warranted the increase.

Plaintiff's medical records do indicate that in 2006, Dr. Zweibel recommended that Plaintiff continue his 300 mg/day dosage of Toprol. He also recommended a Holter Monitor study. The Holter Monitor test was performed on September 14, 2006, again, after Plaintiff ceased working and claimed to be totally disabled. The results were normal. (P01212). One month later, Dr. Bahr increased Plaintiff's Toprol dosage to 350 mg/day. In February 2007, Plaintiff consulted Dr. Zweibel and an electrocardiogram

("EKG") was conducted.  These test results were also normal. (P1211).

**B.**     **Plaintiff's Claim for LTD Benefits and Procedural History**

      **1.**     **The Initial Claim**

Plaintiff ceased his employment with Newmark on August 7, 2006.  He applied for LTD Benefits on September 11, 2006 pursuant to Prudential LTD Policy G-90754 through his employment with Newmark. (P01990-P01991).  The Plan's Elimination Period prior to eligibility for LTD benefits is 90 days,.  (P01073).

Under the LTD Policy at issue in this case:

You are disabled when ***Prudential determines*** (emphasis added) that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury. (emphasis removed) (P01086).

The LTD Policy further defines "material and substantial duties" as those duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, **except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week** (*Id.*)(emphasis added).
- 

The LTD Policy further defines "regular occupation" to mean "the occupation you are routinely performing when your disability begins.  Prudential will look at your occupation **as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.**" (*Id.*)(emphasis added).

In his Employee Statement submitted in support of his application for LTD Benefits, Plaintiff indicated that the conditions that disabled him were "fatigue, limited

resistance, heart problems, worsening episodes of syncope, stomach problems, etc."
(P01991).

   After obtaining Plaintiff's medical records from all of his identified healthcare
providers, Prudential submitted those records for review to Diane Chase, RN.
After reviewing those medical records, Nurse Chase in a SOAP Note[3] dated October 26,
2006, indicated that Plaintiff had been diagnosed with sinus tachycardia in 2002 and that
all his subsequent examinations and tests revealed normal findings with the exception of
a Tilt-Table Test that reproduced near-syncope associated with hypotension and
inappropriate brachycardia. She also noted that there did not seem to be any changes
between the diagnosis in 2002 and the last day that Plaintiff was at work, and that there
were no documented syncope episodes, shortness of breath with exertion,
lightheadedness, nausea, or abnormal vital signs/examinations leading up to his last day
at work. She also pointed out that Plaintiff's cardiology workup was largely normal and
that the results of the Tilt-Table Test were controlled with medication. Similarly, there
were no findings of gastroenterological problems following the 2005 colonoscopy or
evidence of aggressive management of GI symptoms.  (P01125-P01130).

   During the initial claim determination process, Plaintiff's reports of a thyroid
nodule, a lung mass, and anxiety also were examined. The thyroid nodule was noted to be
monitored, but there were no apparent functional limitations because of it. The lung mass
appeared to have resolved itself and needed no further treatment. Therefore, no

---

[3]    SOAP is an acronym used by Prudential in its claim review process and stands for
       Subjective, Objective, Assessment, Plan.

limitations were caused by the lung mass. No mental health evaluation or medication had been recommended as a result of Plaintiff's reported anxiety. Therefore, it was determined that there was no documentation to support limitations caused by anxiety. (*Id.*).

Based on its review of Plaintiff's medical records, Prudential by letter dated October 30, 2006, informed Plaintiff that it was denying his claim for LTD Benefits. In so doing, Prudential advised Plaintiff that there was no medical documentation to support his claim that he was unable to perform his regular occupation. (P01184-P01187).

It would appear that thereafter Plaintiff's cardiologist, Dr. Zweibel, contacted Prudential regarding its denial of Plaintiff's claim for LTD Benefits. On November 3, 2006, Dr. Zweibel spoke with Nurse Chase regarding Plaintiff. In a SOAP Note dated November 6, 2006, Nurse Chase recalled her conversation with Dr. Zweibel. In that conversation. Dr. Zweibel confirmed that he never witnessed Plaintiff have a syncopal episode except during a Tilt Table Test. However, at every visit both when he was working and after, with Dr. Zweibel, Plaintiff would report that he was dizzy and lightheaded. Furthermore, Plaintiff's co-workers purportedly witnessed incidents of Plaintiff's dizziness and lightheadedness while at the airport on one occasion. Dr. Zweibel indicated that the last time he saw Plaintiff, on October 31, 2006, Plaintiff complained that he was lightheaded and had chest pain. Dr., Zweibel indicated to Nurse Chase that he believed Plaintiff suffered from an autoimmune disease and recommended he see an immunologist. Dr. Zweibel, however, did not know if Plaintiff followed this recommendation. (P01133-P01134, P01197-P01198).

8

In that same SOAP Note, Nurse Chase noted that Plaintiff had unresolved symptoms of chest discomfort. However, the medical records in Prudential's possession from his healthcare providers, including Dr. Zweibel and Dr. Bahr, fail to indicate the number of syncopal events except for the one time it was observed by Dr. Zweibel during the Tilt Table Test and a one time occurrence in the airport. Nurse Chase opined that based on the available medical records and her conversation with Dr. Zweibel it was unclear as to how the above conditions were continuing to impair Plaintiff. Based, however, upon her discussions with Prudential Medical Directors, Dr. LoCasio and Dr. Day, Nurse Chase recommended that Plaintiff's Medical Records be reviewed by an external reviewer. (*Id.*).

Accordingly, on its own initiative, Prudential by letter dated November 6, 2006, submitted Plaintiff's claim for an independent medical review by a physician who specializes in cardiology. Prudential informed Plaintiff of same by letter dated November 6, 2006 and advised him that it would render a decision within 30 days. (P01178-P01179).

During that time period, Dr. Bahr submitted a letter on Plaintiff's behalf, dated November 8, 2006. This letter asserted Dr. Bahr's contention that Plaintiff suffered from "a series of extremely serious medical challenges best described as a bundle of autonomic and compromised immune system issues." However, Dr. Bahr did not cite any medical evidence in support of his various diagnoses other than the fact that Plaintiff was on a high dosage of Toprol and complained of a laundry list of claimed symptoms. (P01334-P01335).

An independent medical records review was performed by Dr. Dianne Zwicke, who is board certified in internal medicine and cardiovascular disease. (P01327-P01333) Dr. Zwicke concluded that Plaintiff's autonomic dysfunction was controlled by the Toprol. While the dosage of 350 mg/day of Toprol was acknowledged to be high, Dr. Zwicke noticed that there was only one mention of sluggishness caused by the Toprol – in an office visit note dated October 4, 2006. There was no evidence that any substitute medication had been suggested or tried in an attempt to alleviate the claimed side effects of Toprol. Dr. Zwicke also noted that there was no demonstrated cardiac arrhythmia in any objective tests provided, and no treatment was given for sinus tachycardia. Dr. Zwicke further referenced the normal findings on the Holter Monitor test conducted by Dr. Zweibel on September 14, 2006. All bowel symptoms seemed to be controlled with medication, and no follow-up to the colonoscopy had been done, suggesting that these symptoms were stable. Dr. Zwicke concluded that the medical records did not provide sufficient documentation of functional limitations. (*Id.*).

Prudential also requested a vocational review by Diana Turner, CRC, a vocational rehabilitation consultant. Ms. Turner reviewed Plaintiff's job description, employee statement, the OASYS occupational data program and the Dictionary of Occupational Titles. Through these sources, Ms. Turner concluded in a SOAP Note dated November 7, 2006, that the job title most closely associated with Plaintiff's regular occupation was Vice President. Her analysis stated that the job required the ability to work long hours, to make substantial travel, and to deal with intense pressure to succeed all of which Plaintiff claimed he incurred in his position with Newmark. (P01135-P01136).

10

Based upon the medical records provided by Plaintiff's treating healthcare providers, including, without limitation, Dr. Bahr, Dr. Zweibel, Dr.Goldberg and his endocrinologist, Dr. Szabo, the telephone discussion with Dr. Zweibel and the review of all of this information by Dr. Zwicke, Prudential by letter dated November 29, 2006 informed Plaintiff that it was denying his claim as there was no medical documentation that he was unable to perform his own occupation. More specifically, Prudential noted that his autonomic dysfunction has been successfully treated with Toprol, his cardiac testing has come back revealing normal heart function, while he has a mild mitral regurgitation, he was asymptomatic and was not impaired, his lung mass had been resolved and the thyroid nodule was benign. As to the alleged side effects of Toprol, Prudential noted that there were no side effects reported except for a brief mention of sluggishness in an Office Visit Note with Dr. Bahr on October 4, 2006. (P01173-P01176).

### 2.     Plaintiff's Appeal

On or about May 31, 2007, Plaintiff, through his attorney, Michael Quiat, Esq., appealed the initial claim denial. In support of his appeal, Plaintiff provided additional medical information, including Certifications from his various healthcare providers regarding his purported medical condition as well as statements from Plaintiff's co-workers, supervisors and his significant other as to their observations of Plaintiff. (P01270-P01326).

In the appeal, Plaintiff's counsel noted that since the denial of his claim he was

diagnosed by Dr. Alcibiades Rodriguez, a neurologist, with Obstructive Sleep Apnea.[4] (P01217-P01219). In addition, Plaintiff's counsel indicated that Plaintiff had consulted with Dr. Mark Gardenswartz, an Internist and Nephrologist, who diagnosed Plaintiff with Dysautonomia, a disorder of the Autonomic Nervous System. (P01270-P01274). Plaintiff's counsel also claimed that his client also purportedly suffered from glaucoma in addition to his other allegedly disabling conditions.

Further and updated medical records were requested by Prudential as part of the appeals process from all of Plaintiff's healthcare providers, including Dr. Gardenswartz, Dr. Rodriguez. and Dr. Laura Cozzarelli, Plaintiff's ophthalmologist who diagnosed him with glaucoma. (P01554-P01569).

In addition, a neuropsychological independent medical examination ("IME") of Plaintiff was requested in order to evaluate Plaintiff's claim of disability due to mental confusion and short term memory loss as a result of high-dose Toprol. (P01166-P01167). Plaintiff conceded that his symptoms of mental confusion and short term memory loss were not disabling and Prudential agreed to waive the neuropsychological IME on Plaintiff's request. (P01160-P01161, P01226).

During the appeal process, two more independent medical records evaluations were requested by Prudential. (P01155-P01158). The first was performed by Dr. Richard N. Silverstein, who is board certified in ophthalmology. Dr. Silverstein examined Plaintiff's complaints of limitations caused by glaucoma. Dr. Silverstein in a report dated

---

[4]     In his Report dated March 23, 2007, Dr. Rodriguez indicated that Plaintiff had "Probable Obstructive Sleep Apnea. He further indicated in his Report that Plaintiff "works in his own business and does some consulting work". He later amended his Report on April 3, 2007 to indicate that Plaintiff had a mild degree Obstructive Sleep Apnea. (P01231).

July 20, 2007 opined that the records suggested no functional impairments or visual impairments from the glaucoma. (P01208-P01210).

The second medical records review was performed by Dr. Eldred Zobl, who is board certified in cardiology. Dr. Zobl opined in a report dated August 7, 2007 that there was no report of abnormal findings during the Holter Monitor test, that there had been a normal EP study, that the echo had found mild mitral regurgitation but was otherwise normal, and that there was a normal EKG. Dr. Zobl did note the abnormal Tilt-Table Test conducted in 2002, but could not draw any conclusions because the results of the test and accompanying vital signs were not described. (P01202-P01207).

Thereafter, by letter dated August 28, 2007, Prudential informed Plaintiff that it was upholding its prior decision to deny his claim. Prudential indicated in its letter that based upon the review of all of the available medical records by its independent medical doctors there was nothing documented in Plaintiff's medical records which would preclude him from being able to perform the material and substantial duties of his regular occupation. (P01147-P01152).

## LEGAL ARGUMENT

## II.   POINT I - SUMMARY JUDGMENT IS APPROPRIATE WITH REFERENCE TO PLAINTIFF'S ERISA CLAIM UNDER THE ABUSE OF DISCRETION STANDARD OF REVIEW

### A.   Standard of Review

#### 1.   Summary Judgment Standard

Plaintiff alleges that he is entitled to receive LTD Benefits under a group contract of insurance for long term disability coverage with Newmark pursuant to Section 502 of

ERISA, 29 U.S.C. §1132.  Simply put, this claim must fail because Plaintiff is not

disabled as defined by the terms of the LTD Policy.  Moreover, Prudential's decision to

deny Plaintiff's claim for benefits was not arbitrary and capricious.  Therefore, Plaintiff's

claim must be dismissed as a matter of law.

### 2.      Under the Arbitrary and Capricious Standard of Review, Plaintiff's Claim Must Fail.

To survive Prudential's motion, Plaintiff must establish a genuine issue of

material fact as to whether Prudential's denial of his claim for benefits was arbitrary and

capricious.  Specifically, where, as in this case, Prudential has exercised a grant of

discretionary authority to determine a claim for benefits, a Court is mandated to review

the denial under an "arbitrary and capricious" standard of review.  *Firestone Rubber &

Tire Co. v. Bruch*, 489 U.S. 101, 115 (1989).   Furthermore, the determination of whether

a claims administrator, such as Prudential, acted in an arbitrary and capricious manner in

determining eligibility for benefits under the terms and provisions of an ERISA-regulated

plan may properly be decided by the Court as a matter of law.  *Id.*

The Supreme Court in *Bruch* held that an action to recover plan benefits under

ERISA should be judicially reviewed under an arbitrary and capricious standard if "the

benefit Plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the Plan." *Bruch*, 489 U.S. at 115.

Here, the LTD Policy expressly grants discretionary authority to Prudential to

determine eligibility for benefits or to construe the terms of the LTD Policy. The Policy's

Certificate of Coverage provides the following definition of disability:

You are disabled when ***Prudential determines*** (emphasis added) that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury. (emphasis removed) (P01086).

… We may request that you send proof of continuing disability, *satisfactory to Prudential* (emphasis added), indicating that you are under the regular care of a doctor. (P01099).

In addition, the Summary Plan Description ("SPD") provided to Plan participants also contains explicit discretionary language:

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious. (P01111).

The cases of *Simone v. Prudential Ins. Co. of Amer. & Benj. Jacobson & Sons*, No. 04-Civ.2076 (DLC), 2005 WL 475406 (S.D.N.Y. Feb. 28, 2005) and *Mood v. Prudential Ins. Co. of Am. & Yasuda Fire & Marine Ins. Co. of Am.*, 379 F. Supp. 2d 267 (E.D.N.Y. 2005) dealt with LTD Policies whose language concerning the discretion of the Claims Administrator was identical to that in the present matter. In both of those cases, the Court concluded that the grant of discretion was sufficiently strong to warrant the use of an arbitrary and capricious standard of review. *See Simone*, *supra* at *5-6; Mood*, 379 F. Supp. 2d at 274. Other Courts have held that this language warrants application of the arbitrary and capricious standard of review. *See generally McCoy v. Prudential Ins. Co. of Am.*, No. 05-cv-11283 (D. Mass. July 31, 2006), *Shapiro v. Prudential Ins. Co. of Am.* 2003 U.S. App. LEXIS 22053 (3d Cir. October 28, 2003), *Roach v. Prudential Ins. Brokerage, Inc.*, 2003 U.S. App. LEXIS 7232 (10th Cir. April

16, 2003), *Eubanks v. Prudential Ins. Co. of Am.*, 2004 U.S. Dist. LEXIS 19001

(M.D.N.C. September 2, 2004), *Lyles v. Prudential Ins. Co. of Am.*, 2004 U.S. Dist.

LEXIS 11003 (E.D. Mo. June 14, 2004), *McLaughlin v. Prudential Ins. Co. of Am.*, 319

F. Supp. 2d 115 (D. Mass. 2004), *Mitchell v. Prudential Health Care Plan*, 2002 U.S.

Dist. LEXIS 10567 (D. Del. June 10, 2002). Accordingly, the arbitrary and capricious

standard governs the Court's review of Prudential's denial of plaintiff's claim for

benefits.

     The arbitrary and capricious standard of review is a highly deferential standard of

review.  The question is "whether the decision was based on a consideration of the

relevant factors and whether there has been a clear error of judgment." *Bowman Transp.*

*Inc. v. Arkansas-Best Freight Sys. Inc.*, 419 U.S. 281 (1974).

     The Supreme Court has described the standard thusly:

> Under the arbitrary and capricious standard the scope of review is a
> narrow one.  A reviewing court must consider whether the decision was
> based on a consideration of the relevant factors and whether there has
> been a clear error of judgment . . . The court is not empowered to substitute its
> judgment for that of the [plan administrator] . . . The [plan administrator]
> must articulate a rational connection between the facts found and the
> choice made . . . While we may not supply a reasoned basis for the [plan
> administrator's] action that the [plan administrator] has not given . . . we
> will uphold a decision of less than ideal clarity if the .... path may
> reasonably be discerned.

*Id.* at 285-86

     When the arbitrary and capricious standard of review is applicable, the Claims

Administrator's decision should only be overturned if that decision was "without reason,

unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX*

*Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).  The scope of review is "narrow" and the

Court is not to substitute its judgment for that of the Claims Administrator. *New England Health Care Employees Union v. NLRB*, 448 F.3d 189, 194 (2d Cir. 2006).

The arbitrary and capricious standard may only be disturbed if a conflict of interest *in fact* influenced the Administrator's decision. *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000). In other words, in order for the arbitrary and capricious standard to be affected by a conflict of interest, the conflict must be serious. *Fay v. Oxford Health Plan*, 287 F.3d 96, 109 (2d Cir. 2002). The mere fact that an insurance company both decides eligibility for benefits and pays for those benefits does not create a conflict of interest serious enough to change the standard of review. *Id.* In the case of a conflict of interest, the party seeking *de novo* review must show that the conflict of interest in fact affected the outcome of the claim determination. *Id.*

Indeed, the Second Circuit has refused to engage in any presumptions of a purported conflict and has held that before any conflict will alter the deferential review standard, the beneficiary must first prove "that the administrator was in fact influenced by such conflict" in rendering a decision. *Sullivan v. LTV Aerospace and Def. Co.* 82 F.3d 1251, 1255-56 (2d Cir. 1996). The Second Circuit reaffirmed its position in *Whitney v. Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) by holding that the beneficiary must not only prove that a potential conflict exists but that it also affected the reasonableness of the fiduciary's decision.

Plaintiff has made no allegations of any facts which point to Prudential's decision being influenced by its position as the entity that decides eligibility for benefits and pays for those benefits. Indeed, the record evidence demonstrates that Prudential acted fairly

in evaluating Plaintiff's claim for LTD Benefits as demonstrated, in part, by the fact that on its initial review of Plaintiff's claim, Prudential took it upon itself to reopen the claim to consider additional medical information and have Plaintiff's medical records reviewed by an independent healthcare professional, Dr. Zwicke. (P01178-P01179, P01327-P01333).

*Pagan* further requires a Court to uphold the decision of an administrator granted discretion unless it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 210 F.3d at 92.

Here, Prudential reviewed voluminous medical records submitted by Plaintiff and his healthcare providers. As part of the initial claim decision, Plaintiff's medical records were reviewed both by an internal clinical reviewer and by an independent physician, board certified in internal medicine and cardiovascular disease. (P01125-P01130, P01327-P01333). Prudential also decided on its own initiative to reopen the initial claims decision to consider additional medical information provided by Plaintiff and his healthcare providers, including the opinions of his cardiologist, Dr. Zweibel.

Furthermore, during the appeals process, Plaintiff's medical records were again reviewed by two independent physicians – one board certified in ophthalmology and the other in internal medicine and cardiology. (P01155-P01158, P01202-P01207). Each of the reviewers came to identical conclusions. They were unanimous in their opinions that the medical evidence – diagnostic testing and physical examinations – did not support Plaintiff's claim that he was disabled from his own occupation as that term is defined by the LTD Policy. (*Id.*).. Plaintiff even underwent a 24-hour Holter Monitor Test after he

18

alleged he was disabled, to evaluate his cardiac function. Even that test was completely normal and showed no signs of any cardiac condition that would render him functionally disabled. There was quite simply insufficient medical evidence to support Plaintiff's claims to suffer functional impairment.

Prudential reviewed the conclusions of its own internal clinical reviewer and, particularly, those of the independent physicians who had been consulted. Prudential also conducted a vocational review by Ms. Turner in order to determine the material and substantial duties of Plaintiff's regular occupation as defined by the LTD Policy. (P01135-P01136). The LTD Policy defines material and substantial duties as those that:

- are normally required for the performance of [Plaintiff's] regular occupation; and
- cannot be reasonably omitted or modified, *except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.* (emphasis added) (P01086.)

The LTD Policy defines a regular occupation as "the occupation you are routinely performing when your disability begins. *Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.*" (emphasis added)(*Id.*).

In short, Prudential undertook a comprehensive and exhaustive investigation before reaching the decision to deny Plaintiff's claim for LTD benefits as he did not meet the qualifications of being disabled in accordance with the LTD Policy, a factor that indicates a reasonable decision by Prudential. That review indicated that Plaintiff was and is an individual who had lived with and successfully functioned in a stressful work

environment with his medical conditions for over three years. Indeed, the Certifications of his co-workers, supervisors and healthcare professionals, although not medical records, do demonstrate that Plaintiff functioned at a highly skilled and competent level throughout his tenure with Newmark. (P01270-P01323). Nothing contained in the medical records supported his claim that his long standing medical conditions changed such that they now disabled him from performing his own occupation for 40 hours per week. Indeed, it appears that Plaintiff is presently working in his own business and on a contract basis as referenced to in Dr. Rodriguez's report. (P01017-P01019).

Moreover, based upon Prudential's thorough investigation of Plaintiff's application and appeal, its determination was reasonable and supported by substantial evidence. Specifically, from a medical standpoint, Prudential's final determination that Plaintiff is not disabled under the terms of the LTD Policy was based upon an exhaustive review of medical records provided to it by Plaintiff or by his healthcare providers. Therefore, Prudential's denial of Plaintiff's claim for disability benefits was the only reasonable conclusion based upon the evidence in the medical records or reports.

In sum, Prudential's determination that Plaintiff was not disabled under the terms of the LTD Policy was based upon a thorough and exhaustive review of all of Plaintiff's medical records by its staff and three independent and experienced healthcare professionals. As such, it cannot be deemed "unreasonable" or "unsupported by the evidence." Although Plaintiff may disagree with that determination, that is not the issue. Instead, Prudential's determination need only be reasonable and supported by the record. *See, e.g., Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995)

20

Given the language of the LTD Policy defining disability and Plaintiff's failure to provide any medical documentation refuting Prudential's conclusion, Prudential's determination was reasonable.   Since Prudential's determination is a reasonable conclusion supported by an extensive investigation, it cannot be overturned.

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that Plaintiff's Complaint must be dismissed with prejudice in its entirety.

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Defendant

Dated:  April 15, 2008

By: /s/ Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
(215) 963-5001 (fax)

Attorneys for Defendant

21

## CERTIFICATION OF SERVICE

I Seth Ptasiewicz certify as follows:

I am an associate with the law firm of Morgan, Lewis & Bockius, LLP, attorneys for Defendant in the within matter.  I certify that a true and correct copy of the within Notice of Motion and supporting papers were served via electronic filing and first class mail on behalf of the herein named Defendant upon:

> Michael E. Quiat, Esq.
> Uscher, Quiat, Uscher & Russo
> 433 Hackensack Ave., 2nd Floor
> Hackensack, NJ 07601

I further certify that the within Motion was electronically filed this day with the:

> Clerk of the United States District Court
> Southern District of New York
> United States Courthouse
> 100 Pearl Street
> New York, New York 10007

> /s/ Seth Ptasiewicz
> Seth Ptasiewicz

Dated: Philadelphia, Pennsylvania
       April 15, 2008

22