**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDWARD A. FRIEDMAN,

        Plaintiff,

        vs.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.

Civil Action No.:07-CIV-9620(SHS)

**REPLY BRIEF**


MORGAN, LEWIS & BOCKIUS LLP
Jeremy P. Blumenfeld, Esq.
Seth Ptasiewicz, Esq.
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
(215) 963-5001 (fax)

Attorneys for Defendant

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ...................................................................................... 2

III.  LEGAL ARGUMENT ........................................................................................... 3

    A.    PRUDENTIAL'S DECISION TO DENY PLAINTIFF'S CLAIM FOR
         LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS .................... 3

    B.    PRUDENTIAL PROVIDED A FULL AND FAIR REVIEW OF HIS
         CLAIM ............................................................................................................ 17

IV.   CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

Aetna Health Ins. v. Davila,
542 U.S. 200 (2004)................................................................17

Atkins v. Park Place Entertainment Corporation,
2008 WL 820040 (E.D.N.Y. March 25, 2008) ..........................12, 16, 20, 22

Black & Decker Disability Policy v. Nord,
538 U.S. 822 (2003)................................................................11,12, 15, 16

Bowman Transport, Inc. v. Arkansas-Best Freight Systems, Inc.,
419 U.S. 281 (1974)................................................................4

Celardo v. GNY Automobile Dealers Health & Welfare Trust,
318 F.3d 142 (2d Cir. 2003)....................................................3, 4

Couture v. UNUM Provident Corporation,
315 F. Supp. 2d 418 ................................................................4

Fay v. Oxford Health Policy,
287 F.3d 96 (2d Cir. 2002)......................................................3

Giraldo v. Building Service 32B-J Pension Fund,
2006 WL 380455 (S.D.N.Y. Feb. 16, 2006)..............................17, 20

Great-West Life & Annuity Insurance Co. v. Knudson,
534 U.S. 204 (2002)................................................................21

Greenberg v. Unum Life Insurance Company of America,
2006 U.S. Dist. LEXIS 22423 (E.D.N.Y. Mar. 27, 2006)..............4, 16

Grossmuller v. International Union, UAW,
715 F.2d 853 (3d Cir. 1983)....................................................17

Jones v. UNUM Life Insurance Co.,
223 F.3d 130 (2d Cir. 2000)....................................................21

Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,
46 F.3d 1264 (2d Cir. 1995)....................................................4

Kinstler v. First Reliance Standard Life Insurance Co.,
181 F.3d 243 (2d Cir. 1999)....................................................18

Krauss v. Oxford Health Plans,
    2008 U.S. App. LEXIS 4083 (2d Cir. Feb. 26, 2008) .............................................3, 20

Maniatty v. Unumprovident Corp.,
    218 F. Supp. 2d 500 (S.D.N.Y. 2002).........................................................................16

Miller v. United Welfare Fund,
    72 F.3d 1066 (2d Cir. 1995).........................................................................4, 17, 20

Nickels v. The Prudential Insurance Company of America,
    406 F.3d 89 (2d Cir. 2005).........................................................................................1

Paese v. Hartford Life and Accident  Insurance Co.,
    449 F.3d 435 (2d Cir. 2006).................................................................................4, 12

Pagan v. NYNEX Pension Policy,
    52 F.3d 438 (2d Cir. 1995).........................................................................................1

Peterson v. Continental Casualty Co,
    77 F. Supp. 2d 420 (S.D.N.Y. 1999).............................................................18, 20, 22

Pulvers v. First UNUM Life Insurance Co.,
    210 F.3d 89 (2d Cir. 2000).........................................................................................1

Quigley v. UNUM Life Insurance Co. of America,
    340 F. Supp. 2d 215 (D. Conn. 2004) .......................................................................12

Sereboff v. Mid Atlantic Medical Services, Inc.,
    126 S. Ct. 1869 (2006).............................................................................................21

Viglietta v. Metropolitan Life Insurance Co,
    2005 WL 5253336 (S.D.N.Y. Sept. 2, 2005).............................................................21

I.    **PRELIMINARY STATEMENT**

This Brief is submitted on behalf of Defendant, Prudential Insurance Company of America (hereinafter "Prudential"), in opposition to Plaintiff, Edward A. Friedman's (hereinafter referred to as "Plaintiff") Motion for Summary Judgment and in further support of its Motion for Summary Judgment on all of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Contrary to the arguments made by Plaintiff in his moving papers that Prudential's decision to deny his claim for Long Term Disability Benefits ("LTD Benefits") under a Group Long Term Disability Policy ("LTD Policy") through his employer was "arbitrary and capricious"[1] it is respectfully submitted that based upon all of the substantial evidence, including the medical documentation provided by Plaintiff, his legal counsel and his healthcare providers,

---

[1]    Although Plaintiff throughout his Brief attempts to argue that Prudential's decision to deny his claim for LTD Benefits was arbitrary and capricious, in footnote 3 of his Brief Plaintiff, in the alternative, asks that the Court review Prudential's decision utilizing a *de novo* standard of review. This argument has no merit. Even if the fiduciary is proceeding under a conflict of interest in both administering the LTD Policy and paying benefits out of its own funds, this would not necessitate a *de novo* review but would merely require the Court to weigh the conflict as a factor when applying the arbitrary and capricious standard of review. Pagan v. NYNEX Pension Policy, 52 F.3d 438, 442 (2d Cir. 1995). Furthermore, the Court may not diverge from the arbitrary and capricious standard due to the purported conflict unless Plaintiff shows that the administrator was in fact influenced by the conflict. Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000). Here, Plaintiff has proffered no evidence that the conflict influenced Prudential. In fact, the opposite is true as evidenced by the fact that on its own initiative Prudential reopened the claim upon receipt of additional information from plaintiff's cardiologist. Furthermore, the case cited by Plaintiff in support of his argument, Nickels v. The Prudential Insurance Company of America, 406 F.3d 89 (2d Cir. 2005), does not support his position. In that case, the Second Circuit found that a *de novo* standard of review applied in part because Prudential did not make a decision on Nickels' claim for LTD Benefits until after the expiration of the time period provided under the federal regulations governing these claims. As such, the Court found the claim "deemed denied". The Court's review in that case therefore was *de novo* because Prudential did not exercise any discretion in denying the claim. Id. at 109.

Plaintiff failed to meet his burden of demonstrating the his present medical conditions rendered him disabled as that term is defined in the LTD Policy at issue in this case.

Nor is there any support in the Administrative Record for Plaintiff's argument that Prudential failed to conduct a "full and fair review" of his claim. The record demonstrates that Prudential considered all of Plaintiff's purported disabling medical conditions in rendering its decision. It further submitted Plaintiff's medical records to three highly qualified medical professionals for them to render opinions as to whether there was any basis to find Plaintiff disabled as that term is defined by the LTD Policy at issue in this case. Based upon the record evidence before Prudential during its review of Plaintiff's claim, Prudential properly denied his claim that he was disabled by the same medical conditions that he had lived with, and by his own admission and by the statements of his supervisors, co-workers, and significant other was able to work successfully with despite working long hours in an apparently highly stressful job for over three years prior to leaving his employment. Prudential gave Plaintiff every opportunity to demonstrate that he was disabled and on its own initiative reopened its initial review of Plaintiff's claim after his cardiologist contacted Prudential questioning its decision to deny his claim for LTD Benefits. Plaintiff failed to meet his burden. Thus, Prudential's decision to deny Plaintiff's claim for LTD Benefits must be upheld.

## II.    **STATEMENT OF FACTS**

Prudential relies upon its Statement of Undisputed Facts previously submitted to the Court in Support of its Summary Judgment Motion.

2

III.    **LEGAL ARGUMENT**

A.    **PRUDENTIAL'S DECISION TO DENY PLAINTIFF'S CLAIM FOR LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS**

In Point II of his Brief, Plaintiff attempts to argue that Prudential's decision to deny his claim for LTD Benefits was not supported by substantial evidence. In so doing, Plaintiff, without any factual foundation, engages in an ad hominem attack on the credentials and professional integrity of the medical professionals, Dr. Zwicke and Dr. Zobl[2], which Prudential used in reviewing Plaintiff's medical records to determine if he is disabled as that term is defined by the LTD Policy. Plaintiff's arguments must fail as a matter of law.

An ERISA fiduciary's decision is arbitrary and capricious, and therefore subject to reversal, if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. Krauss v. Oxford Health Plans, 2008 U.S. App. LEXIS 4083 at *17 (2d Cir. Feb. 26, 2008), Fay v. Oxford Health Policy, 287 F.3d 96, 104 (2d Cir. 2002). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance of the evidence. Celardo v. GNY Automobile Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003).

---

[2]    Certainly, Plaintiff's reference to Dr. Zwicke and Dr. Zobl as merely "hired insurance defense experts" is belied by their credentials. Dr. Zobel has been a doctor for over 50 years. He is Board Certified in Internal Medicine with a subspecialty in Cardiovascular Disease. He has been on the teaching faculty of Providence Hospital in Southfield, Michigan since 1968. He was formerly that Chairman of the Department of Medicine at Providence Hospital from 1969 through 1981. He also served as the President of that hospital's Medical Staff from 1988 through 1989. He has also lectured and written on the subject of cardiology. (P01365 through P01369).

As to Dr. Zwicke, she is Board Certified in Cardiovascular Disease and Internal Medicine. She is presently a Clinical Associate Professor of Medicine at the University of Wisconsin Medical School. She has extensively lectured and written on the area of cardiology. (PO1374 through PO1393).

1-PH/2909149.2

The scope of review under the arbitrary and capricious standard is a narrow one. Celardo, supra, 318 F.3d at 146. Thus, when an employee benefit LTD Policy provides for fiduciary discretionary authority, this Court must review deferentially the denial of benefits. Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995). As decisions of fiduciaries are accorded great deference, the Court may not upset a reasonable interpretation by the fiduciary. Nor may the trial judge substitute his or her judgment for that of the fiduciary. Jordan v. Retirement Committee of Rensselaer Polytechnic Institute, 46 F.3d 1264, 1267 (2d Cir. 1995), Greenberg v. Unum Life Insurance Company of America, 2006 U.S. Dist. LEXIS 22423 at **26-27 (E.D.N.Y. Mar. 27, 2006).

The question before the Court is whether the decision by the fiduciary was based upon a consideration of the relevant facts and whether there has been a clear error of judgment. Bowman Transp., Inc. v. Arkansas-Best Freight Systems, Inc., 419 U.S. 281, 285 (1974).

Moreover, it is Plaintiff's burden to prove by a preponderance of the evidence that he is totally disabled within the meaning of the LTD Policy. Paese v. Hartford Life and Accident Insurance Co., 449 F.3d 435, 441 (2d Cir. 2006).

In attempting to argue that Prudential's decision to deny his claim for LTD Benefits was arbitrary and capricious, Plaintiff at page 16 of his Brief attacks the reports prepared by Dr. Zwicke and Dr. Zobl in regards to their review of Plaintiff's medical records. In so doing, Plaintiff appears to argue that Prudential's decision was arbitrary and capricious because it did not request an Independent Medical Examination of Plaintiff. However, neither ERISA, the Department of Labor regulations governing and interpreting ERISA, nor the LTD Policy at issue in this case require Prudential to conduct such examinations. Couture v. UNUM Provident Corporation, 315 F. Supp. 2d 418, 432 (S.D.N.Y. 2004). Rather, the key issue is whether

4

Prudential had sufficient evidence in the Administrative Record to support its determination without an Independent Medical Examination. Id.  It is respectfully submitted that Prudential's decision was well founded.

Here, Prudential solicited, received and reviewed all of Plaintiff's voluminous medical records from Plaintiff, his legal counsel and his healthcare providers.

As part of the initial claim decision, Plaintiff's medical records were reviewed both by an internal clinical reviewer and by an independent physician, board certified in internal medicine and cardiovascular disease.  (P01125-P01130, P01327-P01333). Prudential also decided on its own initiative to reopen the initial claims decision to consider additional medical information provided by Plaintiff and his healthcare providers, including the opinions of his cardiologist, Dr. Zweibel.

Furthermore, during the appeals process, Plaintiff's medical records were again reviewed by two independent physicians, one board certified in ophthalmology and the other in internal medicine and cardiology. (P01155-P01158, P01202-P01207).  The reviewers were unanimous in their opinions that the medical evidence – diagnostic testing and physical examinations – did not support Plaintiff's claim that he was disabled from his own occupation as that term is defined by the LTD Policy. (Id.).  Plaintiff even underwent a 24-hour Holter Monitor Test after he alleged he was disabled, to evaluate his cardiac function.  Even that test was completely normal and showed no signs of any cardiac condition that would render him functionally disabled.  There was quite simply insufficient medical evidence to support Plaintiff's claims to suffer functional impairment.

Nor is there any merit to Plaintiff's argument at page 16 of his Brief that Prudential and its medical reviewers selectively chose those portions of Plaintiff's medical records it considered that would support its decision.

Specifically, the Administrative Record evidences that after obtaining Plaintiff's medical records from all of his identified healthcare providers, Prudential submitted those records for review to Diane Chase, RN.

After reviewing those medical records, Nurse Chase in a SOAP Note[3] dated October 26, 2006, indicated that Plaintiff had been diagnosed with sinus tachycardia in 2002 and that all his subsequent examinations and tests revealed normal findings with the exception of a Tilt-Table Test that reproduced near-syncope associated with hypotension and inappropriate brachycardia. She also noted that there did not seem to be any changes between the diagnosis in 2002 and the last day that Plaintiff was at work, and that there were no documented syncope episodes, shortness of breath with exertion, lightheadedness, nausea, or abnormal vital signs/examinations leading up to his last day at work. She also pointed out that Plaintiff's cardiology workup was largely normal and that the results of the Tilt-Table Test were controlled with medication. Similarly, there were no findings of gastroenterological problems following the 2005 colonoscopy or evidence of aggressive management of GI symptoms.  (P01125-P01130).

During the initial claim determination process, Plaintiff's reports of a thyroid nodule, a lung mass, and anxiety also were examined. The thyroid nodule was noted to be monitored, but there were no apparent functional limitations because of it. The lung mass appeared to have resolved itself and needed no further treatment. Therefore, no limitations were caused by the lung mass. No mental health evaluation or medication had been recommended as a result of

---

[3]     SOAP is an acronym used by Prudential in its claim review process and stands for Subjective, Objective, Assessment, Policy.

6

Plaintiff's reported anxiety. Therefore, it was determined that there was no documentation to support limitations caused by anxiety. (Id.).

Based on its review of Plaintiff's medical records, Prudential by letter dated October 30, 2006, informed Plaintiff that it was denying his claim for LTD Benefits. In so doing, Prudential advised Plaintiff that there was no medical documentation to support his claim that he was unable to perform his regular occupation. (P01184-P01187).

It would appear that thereafter Plaintiff's cardiologist, Dr. Zweibel, contacted Prudential regarding its denial of Plaintiff's claim for LTD Benefits. On November 3, 2006, Dr. Zweibel spoke with Nurse Chase regarding Plaintiff. In a SOAP Note dated November 6, 2006, Nurse Chase recalled her conversation with Dr. Zweibel. In that conversation. Dr. Zweibel confirmed that he never witnessed Plaintiff have a syncopal episode except during a Tilt Table Test. However, at every visit both when he was working and after, with Dr. Zweibel, Plaintiff would report that he was dizzy and lightheaded. Furthermore, Plaintiff's co-workers purportedly witnessed incidents of Plaintiff's dizziness and lightheadedness while at the airport on one occasion. Dr. Zweibel indicated that the last time he saw Plaintiff, on October 31, 2006, Plaintiff complained that he was lightheaded and had chest pain. Dr. Zweibel indicated to Nurse Chase that he believed Plaintiff suffered from an autoimmune disease and recommended he see an immunologist. Dr. Zweibel, however, did not know if Plaintiff followed this recommendation. (P01133-P01134, P01197-P01198).

In that same SOAP Note, Nurse Chase noted that Plaintiff had unresolved symptoms of chest discomfort. However, the medical records in Prudential's possession from his healthcare providers, including Dr. Zweibel and Dr. Bahr, fail to indicate the number of syncopal events except for the one time it was observed by Dr. Zweibel during the Tilt Table Test and a one time

7

occurrence in the airport. Nurse Chase opined that based on the available medical records and her conversation with Dr. Zweibel it was unclear as to how the above conditions were continuing to impair Plaintiff. Based, however, upon her discussions with Prudential Medical Directors, Dr. LoCasio and Dr. Day, Nurse Chase recommended that Plaintiff's Medical Records be reviewed by an external reviewer. (Id.).

Accordingly, on its own initiative, Prudential by letter dated November 6, 2006, submitted Plaintiff's claim for an independent medical review by a physician who specializes in cardiology. Prudential informed Plaintiff of same by letter dated November 6, 2006 and advised him that it would render a decision within 30 days. (P01178-P01179).

During that time period, Dr. Gerald Bahr, Plaintiff's primary care physician, submitted a letter on Plaintiff's behalf, dated November 8, 2006. This letter asserted Dr. Bahr's contention that Plaintiff suffered from "a series of extremely serious medical challenges best described as a bundle of autonomic and compromised immune system issues." However, Dr. Bahr did not cite any medical evidence in support of his various diagnoses other than the fact that Plaintiff was on a high dosage of Toprol and complained of a laundry list of claimed symptoms. (P01334-P01335).

An independent medical records review was performed by Dr. Dianne Zwicke, who is board certified in internal medicine and cardiovascular disease. (P01327-P01333). Dr. Zwicke concluded that Plaintiff's autonomic dysfunction was controlled by the Toprol. While the dosage of 350 mg/day of Toprol was acknowledged to be high, Dr. Zwicke noticed that there was only one mention of sluggishness caused by the Toprol – in an office visit note dated October 4, 2006. There was no evidence that any substitute medication had been suggested or tried in an attempt to alleviate the claimed side effects of Toprol. Dr. Zwicke also noted that there was no

8

demonstrated cardiac arrhythmia in any objective tests provided, and no treatment was given for sinus tachycardia. Dr. Zwicke further referenced the normal findings on the Holter Monitor test conducted by Dr. Zweibel on September 14, 2006. All bowel symptoms seemed to be controlled with medication, and no follow-up to the colonoscopy had been done, suggesting that these symptoms were stable. Dr. Zwicke concluded that the medical records did not provide sufficient documentation of functional limitations. (Id.).

Based upon the medical records provided by Plaintiff's treating healthcare providers, including, without limitation, Dr. Bahr, Dr. Zweibel, Dr.Goldberg and his endocrinologist, Dr. Szabo, the telephone discussion with Dr. Zweibel and the review of all of this information by Dr. Zwicke, Prudential by letter dated November 29, 2006 informed Plaintiff that it was denying his claim as there was no medical documentation that he was unable to perform his own occupation. More specifically, Prudential noted that his autonomic dysfunction has been successfully treated with Toprol, his cardiac testing has come back revealing normal heart function, while he has a mild mitral regurgitation, he was asymptomatic and was not impaired, his lung mass had been resolved and the thyroid nodule was benign. As to the alleged side effects of Toprol, Prudential noted that there were no side effects reported except for a brief mention of sluggishness in an Office Visit Note with Dr. Bahr on October 4, 2006. (P01173-P01176).

On or about May 31, 2007, Plaintiff, through his attorney, Mr. Quiat, appealed the initial claim denial. In support of his appeal, Plaintiff provided additional medical information, including Certifications from his various healthcare providers regarding his purported medical condition as well as statements from Plaintiff's co-workers, supervisors and his significant other as to their observations of Plaintiff. (P01270-P01326).

In the appeal, Plaintiff's counsel noted that since the denial of his claim he was diagnosed by Dr. Alcibiades Rodriguez, a neurologist, with Obstructive Sleep Apnea.[4] (P01217-P01219). In addition, Plaintiff's counsel indicated that Plaintiff had consulted with Dr. Mark Gardenswartz, an Internist and Nephrologist, who diagnosed Plaintiff with Dysautonomia, a disorder of the Autonomic Nervous System. (P01270-P01274). Plaintiff's counsel also claimed that his client also purportedly suffered from glaucoma in addition to his other allegedly disabling conditions.

Further and updated medical records were requested by Prudential as part of the appeals process from all of Plaintiff's healthcare providers, including Dr. Gardenswartz, Dr. Rodriguez, and Dr. Laura Cozzarelli, Plaintiff's ophthalmologist who diagnosed him with glaucoma. (P01554-P01569).

In addition, a neuropsychological independent medical examination ("IME") of Plaintiff was requested in order to evaluate Plaintiff's claim of disability due to mental confusion and short term memory loss as a result of high-dose Toprol. (P01166-P01167). Plaintiff conceded that his symptoms of mental confusion and short term memory loss were not disabling and Prudential agreed to waive the neuropsychological IME on Plaintiff's request. (P01160-P01161, P01226).

During the appeal process, two more independent medical records evaluations were requested by Prudential. (P01155-P01158). The first was performed by Dr. Richard N. Silverstein, who is board certified in ophthalmology. Dr. Silverstein examined Plaintiff's complaints of limitations caused by glaucoma. Dr. Silverstein in a report dated July 20, 2007

---

[4]    In his Report dated March 23, 2007, Dr. Rodriguez indicated that Plaintiff had "Probable Obstructive Sleep Apnea. He further indicated in his Report that Plaintiff "works in his own business and does some consulting work". He later amended his Report on April 3, 2007 to indicate that Plaintiff had a mild degree Obstructive Sleep Apnea. (P01231).

10

opined that the records suggested no functional impairments or visual impairments from the glaucoma. (P01208-P01210).

The second medical records review was performed by Dr. Eldred Zobl, who is board certified in cardiology. Dr. Zobl opined in a report dated August 7, 2007 that there was no report of abnormal findings during the Holter Monitor test, that there had been a normal EP study, that the echocardiogram had found mild mitral regurgitation but was otherwise normal, and that there was a normal EKG. Dr. Zobl did note the abnormal Tilt-Table Test conducted in 2002, but could not draw any conclusions because the results of the test and accompanying vital signs were not described. (P01202-P01207).

Thereafter, by letter dated August 28, 2007, Prudential informed Plaintiff that it was upholding its prior decision to deny his claim.  Prudential indicated in its letter that based upon the review of all of the available medical records by its independent medical doctors there was nothing documented in Plaintiff's medical records which would preclude him from being able to perform the material and substantial duties of his regular occupation. (P01147-P01152).  In sum, Prudential conducted a thorough review of Plaintiff's medical records and correctly found that he was not disabled as that term is defined by the LTD Policy.

Nor is there any merit to Plaintiff's argument at pages 17 through 19 of his Brief that Prudential's determination was arbitrary and capricious because it did not purportedly provide Dr. Zobl with the package of statements from Plaintiff's physicians, friends, co-workers and significant others.

The United States Supreme Court has held that Policy fiduciaries need not accord special deference to the opinions of treating physicians.  Black & Decker Disability Policy v. Nord, 538 U.S. 822, 825 (2003).  Although a fiduciary in evaluating a claim for disability benefits may not

11

arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician, Paese, supra, 449 F.3d at 442(quoting Black & Decker Disability Policy v. Nord, 538 U.S. 822, 834 (2003)), it is appropriate for the fiduciary not to consider those opinions where they are not supported by the objective evidence contained within the administrative record. Atkins v. Park Place Entertainment Corporation, 2008 WL 820040 at *15(E.D.N.Y. March 25, 2008), Quigley v. UNUM Life Insurance Co. of America, 340 F. Supp. 2d 215, 223-24 (D. Conn. 2004).

     As noted above, the objective medical evidence in the Administrative Record contradicts the "opinions" of Plaintiff's medical providers as contained in their written statements as well as in the statements of his friends, co-workers and significant other.

     Plaintiff's various healthcare providers based their opinions that Plaintiff is disabled from performing the job duties of his regular occupation primarily on Plaintiff's self-reported subjective symptoms.

     For example, in his Certification, Plaintiff's Internist and Nephrologist, Dr. Mark Gardenswartz,  noted that that Plaintiff had relayed to him his symptoms including shortness of breath with mild exertion, periods of lightheadedness, unsteadiness on his feet, sluggishness of physical motion and mental focus, sexual dysfunction, nighttime chills and excessive sweating, difficulty sleeping and extreme fatigue. Dr. Gardenswartz indicated that it was Plaintiff who informed him that his symptoms had worsened over the course of the prior two years.  (P01270-P01271).  However, these symptoms are not evidenced in any of the normal test results contained in Plaintiff's medical records.

     Similarly, in his Certification, Dr. Gerald Bahr, plaintiff's primary care physician also indicates that it was Plaintiff who relayed to him that he was suffering headaches, flu-like

symptoms, difficulty sleeping and confusion. He also noted that it was Plaintiff who complained that he was having side effects from the medication. (P01275). But the objective medical tests do not support Plaintiff's complaints. Furthermore, if, in fact, Plaintiff was having adverse side effects from his ingesting Toprol, there is nothing in the Administrative Record indicating that his healthcare providers considered changing to a different medication with fewer side effects as suggested by Dr. Zwicke in her review of the claim. As to the alleged side effects of Toprol, Prudential noted that there were no side effects reported except for a brief mention of sluggishness in an Office Visit Note with Dr. Bahr on October 4, 2006. (P01173-P01176).

Similarly, Plaintiff's cardiologist, Dr. Steven Zweibel, likewise relied upon Plaintiff's statements to him that he is suffering side effects from the Toprol including lightheadedness. (P01286-P01288). However, as noted, _supra_, there is nothing in the medical records to support this claim except for Dr. Bahr's Office Visit Note of October 4, 2006. (P01173-P01176). Nor is there anything in the record indicating consideration of medications other than Toprol that would have fewer side effects. Most importantly, all of the medical records indicate that Plaintiff's heart condition was under control. (P01125-P001130).

Furthermore, Plaintiff's healthcare providers' Certifications are fatally flawed because they opine that he is disabled from his particular job. That, however, is not the definition of disability under the LTD policy as noted above.

As to the observations of Plaintiff's supervisors, Barry Gosin and Joseph Rader, that Plaintiff on several occasions in 2006 appeared to be pale, sluggish, sweating, forgetful, exhausted, or not walking at his usual brisk pace, (P01289-P01292), they do not support a claim that Plaintiff was disabled from his regular occupation. Nor do these observations support Plaintiff's argument that his medical conditions caused him on these occasions in 2006 to be

13

pale, sluggish, sweating, forgetful, exhausted, or not walking at his usual brisk pace.   In fact, these symptoms could have been caused, as Mr. Gosin surmised, by the flu. (P01289).  There is certainly nothing in Plaintiff's medical records that links these observations to his underlying medical conditions.  Moreover, despite these outward symptoms on several occasions, it appears that Plaintiff was able to perform his job duties successfully as noted in both Mr. Gosin's and Mr. Rader's Certifications. (P01289-P01292).

Furthermore, the observations of his co-workers, Jessica Tierno and Elizabeth Gilbert, in their Certifications (P01293-P01299) of two incidents in 2006 where he fell in an airport and almost fell outside a restaurant does not evidence that he is disabled from his regular occupation. Indeed, both of these co-workers indicate that in spite of his longstanding medical conditions, he was able to function.

Finally, Plaintiff's significant other, Yee Cent Wong, relays in her Certification her observations of Plaintiff's medical condition since 2002 and how it apparently affected him. (P01300-P01305).  Yet, during this same time period, it cannot be disputed that Plaintiff by his own admission was working at a hectic pace, traveling extensively and working long hours.  Nor is it disputed that he was apparently able to perform his job duties well as evidenced by the Certifications of his co-workers and supervisors.

Accordingly, these Certifications are contradicted by the objective medical evidence in the Administrative Record and therefore are not entitled to any deference by this Court.

Plaintiff next argues at page 20 of his Brief that the Court must believe his medical providers' opinions because they, in essence, have no reason to lie.  However as the United States Supreme Court recognized, while a consultant engaged by a fiduciary may have an

14

"incentive" to make a finding of "not disabled" so to a treating physician, in a close case, may favor a finding of "disabled". Black & Decker, supra, 538 U.S. at 832.

In the instant matter, Plaintiff's doctors' "opinions" as to Plaintiff being totally disabled as that term is defined by the LTD Policy are unsupported by the medical records. One can rightly surmise that Plaintiff's physicians are being sympathetic to their patient in finding him disabled. However, their sympathies cannot trump the objective medical information in the Administrative Record.

Nor is there any merit to Plaintiff's argument at pages 20-21 of his Brief that Dr. Zwicke and Dr. Zobl ignored the impact of Plaintiff ingesting Toprol-XL and completely ignored his diagnosis. This is inaccurate.

In her review, Dr. Zwicke concluded that Plaintiff's autonomic dysfunction was controlled by the Toprol. (P01327-P01333). While the dosage of 350 mg/day of Toprol was acknowledged to be high, Dr. Zwicke noticed that there was only one mention of sluggishness caused by the Toprol – in an office visit note dated October 4, 2006. There was no evidence that any substitute medication had been suggested or tried in an attempt to alleviate the claimed side effects of Toprol. Dr. Zwicke also noted that there was no demonstrated cardiac arrhythmia in any objective tests provided, and no treatment was given for sinus tachycardia. Dr. Zwicke further referenced the normal findings on the Holter Monitor test conducted by Dr. Zweibel on September 14, 2006. All bowel symptoms seemed to be controlled with medication, and no follow-up to the colonoscopy had been done, suggesting that these symptoms were stable. Dr. Zwicke concluded that the medical records did not provide sufficient documentation of functional limitations. (Id.).

Similarly, Dr. Zobl found that there was no report of abnormal findings during the Holter Monitor test, that there had been a normal EP study, that the echocardiogram had found mild mitral regurgitation but was otherwise normal, and that there was a normal EKG. Dr. Zobl did note the abnormal Tilt-Table Test conducted in 2002, but could not draw any conclusions because the results of the test and accompanying vital signs were not described. (P01202-P01207).

Furthermore, contrary to Plaintiff's assertion in footnote 4 of his Brief, although the Second Circuit has not squarely addressed the issue, several courts in this district have found that it is not unreasonable or arbitrary for the Policy to require a plaintiff to produce objective medical evidence of total disability in support of his claim for disability benefits. Atkins v. Park Place Entertainment Corporation, 2008 WL 820040 at *14(E.D.N.Y. March 25, 2008) (cases cited therein), Greenberg, supra, at *36(Noting that an insurance company must be allowed to employ a system which will prevent awarding benefits to those whose symptoms are exaggerated or faked. As such it is reasonable for the fiduciary to prefer objective verifiable evidence over self-reported symptoms of the insured.) Even where the LTD Policy does not state that objective evidence is required in order to establish disability, where the LTD Policy states that "proof" of disability must be provided, the term "proof" connotes objectivity. It is therefore not unreasonable for the administrator to require an objective component to such proof. Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002). Thus, a fiduciary may reasonably discredit a physician's assessment where the administrative record does not contain objective evidence that supports the assessment. Atkins, supra, at *15(cases cited therein). That is certainly the case here where Plaintiff's medical records do not support the opinions of his healthcare providers.

16

In summary, Prudential's decision is fully supported by Plaintiff's own medical records which fail to evidence any objective indicia of a disability that would prevent him from performing his regular occupation as that term is defined by the LTD Policy. Therefore, Plaintiff's argument that the decision to deny him LTD Benefits was arbitrary and capricious is meritless and his Complaint must be dismissed with prejudice.

**B.     PRUDENTIAL PROVIDED A FULL AND FAIR REVIEW OF HIS CLAIM**

Equally without merit is Plaintiff's argument at page 23 of his Brief, that he was denied a "full and fair review" of his claim for LTD Benefits.

Prudential acknowledges that under ERISA it must afford a reasonable opportunity to any participant whose claim has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. Aetna Health Ins. v. Davila, 542 U.S. 200, 220 (2004), 29 U.S.C. §1133. Full and fair review requires that the decision-maker consider the evidence presented by both parties prior to reaching and rendering a decision. Grossmuller v. International Union, UAW, 715 F.2d 853, 858 n.5 (3d Cir. 1983). If a fiduciary denies an LTD Policy participant's claim for benefits without conducting a full and fair review, that decision will be deemed to be arbitrary and capricious. Giraldo v. Building Service 32B-J Pension Fund, 2006 WL 380455 at *4 (S.D.N.Y. Feb. 16, 2006).[5]

In support of his argument that Prudential failed to conduct a full and fair review, Plaintiff again argues at pages 24-25 of his Brief that Prudential failed to consider the opinions of

---

[5]     To the extent that Plaintiff relies on the Affidavit of Mr. Quiat to support his contention that Prudential's decision to deny his claim for LTD Benefits and that it did not conduct a full and fair review of his claim, that reliance is improper. It is well established that for a review under the arbitrary and capricious standard the district court is limited to the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). The Court can only consider the evidence that the fiduciary itself considered. Id. Thus, this Court cannot consider the Affidavit of Mr. Quiat submitted to rebut statements made in the record. It should therefore be stricken from the Court's docket.

17

his medical providers, friends, co-workers and family members in rendering its decision.  This argument was addressed, <u>supra</u>, in response to Plaintiff's claim that Prudential's decision to deny him LTD Benefits was arbitrary and capricious.  Clearly, the Administrative Record evidences that Prudential fully considered all of Plaintiff's medical records produced by him, his attorney and his healthcare providers.  Those records, as noted <u>supra</u>, do not support his claim or the "opinions" of his healthcare providers, friends, co-workers, supervisors and significant other that he is disabled as that term is defined by the LTD Policy.[6]

Nor is there any merit to Plaintiff's argument at pages 25-27 of his Brief, failed to conduct a full and fair review by not addressing or considering Plaintiff's specific job duties in rendering its decision to deny his claim.

If an LTD Policy does not define the term "regular occupation" the Courts in the Second Circuit have held that the applicable definition of regular occupation should be a position of the same general character as the insured's previous job, requiring similar skills and training and involving comparable duties.  <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 252 (2d Cir. 1999), <u>Peterson v. Continental Casualty Co</u>, 77 F. Supp. 2d 420, 427 (S.D.N.Y. 1999).  This is not the case here.

Under the LTD Policy at issue in this case:

You are disabled when ***Prudential determines*** (emphasis added) that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury. (emphasis removed) (P01086).

---

[6]    Similarly, Plaintiff again argues in this portion of his Brief alleged deficiencies in Prudential's review process such as failure to consider Plaintiff's subjective complaints, failure to do a comorbidity analysis, failure to reconcile conflicting medical opinions and failure to address the impact of his various medications.  As noted in Point I of this Brief, Prudential addressed in detail these concerns.

18

The LTD Policy further defines "material and substantial duties" as those duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, **except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week** (Id.)(emphasis added).

The LTD Policy further defines "regular occupation" to mean "the occupation you are routinely performing when your disability begins. Prudential will look at your occupation **as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.**" (Id.)(emphasis added).

Accordingly, under the terms of the LTD Policy, Prudential was not obligated to look at how Plaintiff performed his specific job duties or that he worked more than 40 hours per week in assessing whether he was able to perform his regular occupation. Thus, Plaintiff's and his healthcare providers' opinions that he cannot work more than 40 hours are irrelevant to a determination as to whether he is disabled from his regular occupation as that term is defined under the LTD Policy.

Furthermore, to assist in its evaluation of the job duties of Plaintiff's regular occupation, Prudential also requested, received and considered a vocational review by Diana Turner, CRC, a vocational rehabilitation consultant. Ms. Turner reviewed Plaintiff's job description, employee statement, the OASYS occupational data program and the Dictionary of Occupational Titles. Through these sources, Ms. Turner concluded in a SOAP Note dated November 7, 2006, that the job title most closely associated with Plaintiff's regular occupation was Vice President. (P01135-P01136).

Thus, contrary to Plaintiff's bald assertion, he was provided with a full and fair opportunity by Prudential to prove that he was entitled to LTD Benefits under the LTD Policy.

19

Indeed, Prudential also decided on its own initiative to reopen the initial claims decision to consider additional medical information provided by Plaintiff and his healthcare providers, including the opinions of his cardiologist, Dr. Zweibel. Accordingly, Plaintiff's claim should be dismissed.

Even assuming, *arguendo,* the Court finds that Prudential did not conduct a full and fair review of Plaintiff's claim for LTD Benefits, the appropriate remedy is to remand Plaintiff's claim for further review by Prudential.

Unless a denial of the claim for benefits was unreasonable, the Second Circuit has held that where a claimant was denied a full and fair review of his claim, the typical remedy would be to remand the claim to the fiduciary for further administrative review. Krauss v. Oxford Health Plans, Inc., 2008 U.S. App. LEXIS 4083 at *41 (2d Cir. Feb. 26, 2008). Thus, Courts will remand, rather than grant summary judgment and award benefits directly, where the Court cannot conclude as a matter of law that a reasonable fiduciary could only have granted the claim for benefits. Atkins, supra, at *20. In other words, unless the evidence in the record makes it clear that it would be unreasonable for the fiduciary to deny the application for benefits on any ground the appropriate remedy is to remand the matter to the fiduciary for further consideration. Miller v. United Welfare Fund, 72 F.3d 1066, 1073-74 (2d Cir. 1995). The evidence of disability must be so overwhelmingly one-sided that a reasonable person could conclude plaintiff was disabled. Giraldo v. Building Service 32B-J Pension Fund, 2006 WL 380455 at *5 (S.D.N.Y. Feb. 16, 2006).

Thus, for example, the Court will remand where the fiduciary fails to analysis fully whether the Plaintiff was disabled from his regular occupation. Peterson v. Continental Casualty Co, 77 F. Supp. 2d 420, 429 (S.D.N.Y. 1999).

20

Similarly, where the Plaintiff's symptoms are significantly subjective, such as fatigue, it is not the Court's role, *de novo* to determine whether those symptoms render Plaintiff unable to perform her job duties. That is the role of the fiduciary on remand. Viglietta v. Metropolitan Life Insurance Co, 2005 WL 5253336 at *11 (S.D.N.Y. Sept. 2, 2005).

It cannot be said as a matter of law that Plaintiff has proven that he is disabled as that term is defined by the LTD Policy. The medical records provided by his healthcare providers do not support such a contention.

Furthermore, in the instant case, Plaintiff contends that he is suffering from maladies that do not appear in the objective medical records of his healthcare provider but rather are subjective in nature. *See* Plaintiff's Brief at p. 29. Thus, the claim should be remanded back to Prudential for further review and consideration of these claims.

Additionally, if the Court is going to award benefits, it must cutoff the benefits as of the date of Prudential's denial letter in light of Prudential's right under the Plan to continue evaluating Plaintiff for his continued eligibility for benefits. Simply because the Court deems Plaintiff eligible for benefits at present does not mean he would be entitled to permanent benefits. Jones v. UNUM Life Insurance Co., 223 F.3d 130, 140-41 (2d Cir. 2000).

Finally, to the extent that the Court may direct Prudential to pay benefits to Plaintiff, it is respectfully submitted that the Court must also take into consideration Prudential's right to subject that award of benefits to a dollar for dollar reimbursement for receipt by Plaintiff of any Social Security Disability Benefits or to any other qualifying deductible income benefit and to reduce Plaintiff's benefits based upon an estimate of the amount of qualifying deductible income benefits he may be entitled to receive if he applied. (P01089-P1092). Sereboff v. Mid Atlantic Medical Services, Inc., 126 S.Ct. 1869, 1874 (2006), Great-West Life & Annuity Ins. Co. v.

21

<u>Knudson,</u> 534 U.S. 204, 210 (2002), <u>Atkins, supra,</u> at *24.

22

**CONCLUSION**

For the foregoing reasons, and the reasons stated in Prudential's initial moving papers, it is respectfully submitted that Plaintiff's Motion for Summary Judgment must be denied and his Complaint must be dismissed with prejudice in its entirety.

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Defendant


Dated: May 9, 2008                     By: /s/ Seth Ptasiewicz_____
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       Jeremy P. Blumenfeld
                                       1701 Market Street
                                       Philadelphia, PA 19103
                                       (215) 963-5258
                                       (215) 963-5001 (fax)

                                       Attorneys for Defendant

## <u>CERTIFICATION OF SERVICE</u>

I Seth Ptasiewicz certify as follows:

I am an associate with the law firm of Morgan, Lewis & Bockius, LLP, attorneys for Defendant in the within matter. I certify that a true and correct copy of the within Brief and supporting papers were served via electronic filing on behalf of the herein named Defendant upon:

>       Michael E. Quiat, Esq.
>       Uscher, Quiat, Uscher & Russo
>       433 Hackensack Ave., 2nd Floor
>       Hackensack, NJ 07601

I further certify that the within Brief and supporting papers was electronically filed this day with the:

>       Clerk of the United States District Court
>       Southern District of New York
>       United States Courthouse
>       100 Pearl Street
>       New York, New York 10007

>       /s/ Seth Ptasiewicz
>       Seth Ptasiewicz

Dated: Philadelphia, Pennsylvania
      May 9, 2008